IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CRIMINAL No. 10-00040-WS-N |
| | ) | (Civil Action No. 12-00017-WS) |
| ALFREDO MANUEL RODRIGUEZ, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

This action is before the Court on Defendant/Petitioner Alfredo Manuel Rodriguez's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (doc. 83), as amended (doc. 95). This matter has been referred to the undersigned Magistrate Judge for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Upon consideration of the petitioner's § 2255 motion, the United States' responses in opposition thereto (docs. 88, 97), petitioner's reply (doc. 98), and all other pertinent portions of the record, it is the recommendation of the undersigned that the § 2255 motion be **DENIED.**

I. BACKGROUND

A. Procedural History.

Rodriguez and a co-defendant, Aaron Eduardo Vasquez-Lopez, were charged in a two count indictment with conspiracy to distribute and possession with intent to distribute approximately 425 pounds or more of marijuana, a Schedule I controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846. (Doc. 4). On July 26, 2010, Rodriguez pleaded guilty to the conspiracy count pursuant to a written plea agreement. (Docs. 37, 39, 75 at 3-23). During the plea colloquy, Rodriguez stated that he had read the plea agreement, discussed it with his attorney, understood the terms and conditions of the plea agreement, agreed with the factual

resume attached thereto and signed both the agreement and the factual resume. (Doc. 75 at 9).

When asked whether the defendant had ever been treated for mental illness or addiction, Rodriguez's counsel advised the Court:

> This case was continued initially at pretrial. Mr. Rodriguez had been off his medications for some time. The matter was continued for him to be stabilized. That is in process. But I have also had reports from his psychiatrist and the treatment facility, and they indicate that he is doing well on his medications. And it is also mental illness issues, not drug or alcohol issues. And I believe he's fully capable of proceeding, understands what's going on.

(Id. at 6-7). The Court then asked whether the defendant was "currently under the influence of any drug or medication or alcoholic beverage of any kind [which were] affecting [him] in any way that would prevent [him] from understanding what's going on here today." (Id. at 7). Rodriguez responded: "I'm just on psych meds, and I don't think that there would be a problem." (Id. at 8). Rodriguez also confirmed that no one had pressured him in any way to plead guilty. (Id. at 9-10). Rodriguez was also advised, prior to entering his guilty plea, that he could be sentenced, *inter alia*, to "a term of imprisonment of not less than 10 years up to life." (*Id.* at 10).

On December 1, 2010, Rodriguez was sentenced to 60 months imprisonment pursuant to "a departure or reduction of 50 per cent off the mandatory minimum [10 year sentence]" as requested by the government in a motion for downward departure pursuant to 18 U.S.C. § 3553(e) and § 5K1.1 of the U.S.S.G. (Docs. 57, 61, 75-1 at 7). A direct appeal was concluded with the filing of a brief pursuant to Anders v. California, 386 U.S. 738 (1967), and an "independent review of the entire record" by the Eleventh Circuit, which revealed "no arguable issues of merit" and resulted in an affirmance of Rodriguez's conviction and sentence on September 21, 2011.[1] (Doc. 78).

---

[1] On November 3, 2011, the Eleventh Circuit's judgment affirming the conviction and sentence was issued as a Mandate. (Doc. 79).

On January 6, 2012, Rodriguez filed the present § 2255 motion in a two-page handwritten form asserting, in sum, that, although now "stable on medication," he is "a mentally ill person" who was "made to do the things I did out of fear for my life and my family's life." (Doc. 83). He generally complains in this document about his counsel's performance but seeks only for the Court to review his case. (*Id.*). Pursuant to the Court's Order dated January 17, 2012 (doc. 87) and subsequent follow-up orders (docs. 89, 92), Rodriguez filed his § 2255 motion on the proper form on April 2, 2012 (doc. 93). Shortly thereafter on April 19, 2012, he filed an amended § 2255 motion (doc. 95). Although the Court's §2255 form required the petitioner to "state every ground on which you claim you are being held in violation of the Constitution, laws, or treaties of the United States," Rodriguez designates "Ground One" of his petition to be "NA" – presumably meaning "not applicable." (Id. at 4). However, he then complains in narrative form about the conduct of the arresting officers and his court appointed attorney, James M. Scroggins. Specifically, he complains that the officers interviewed him despite being made aware that he was "mentally ill and not on medication," and they failed to investigate his contention that he was kidnapped and tortured. (*Id.*). He also complains that Scroggins never followed up on his contention that he was coerced to do what he did and that, although counsel obtained a couple of postponements in the case due to Rodriguez's mental state, he withheld from the Court the psychiatric reports which showed that he "had PTSD [Post Traumatic Stress Disorder], flashbacks, nightmares and a host of other conditions." (*Id.*) Rodriguez asserts:

> I was coerced. I was a victim. No one cared or investigated. A rush to convict. A mentally ill person before I was stable to understand what happened.

(*Id.*). Rodriguez further contends that he did not take a direct appeal and did not raise this issue on appeal because his appointed appellate counsel, Kristen Rogers of the Federal Public Defender's Office, "stated I could not enter new evidence only what was on the record [sic]."

3

(*Id*.). Rodriguez states no further grounds for his § 2255 motion, striking through those sections of the form document where grounds two through four could have been set forth. (*Id.* at 5-11). In the paragraph entitled "Timeliness of Motion," he discusses again his alleged kidnapping, his mental illness, and the failure of anyone to investigate these contentions.[2] (*Id*. at 12). Rodriguez describes the habeas relief he seeks as follows:

> Review the facts. Add to the PSI and Factual Resume to include [sic] the kidnapping and torture. Include the psychiatric report. Remove the enhancement for any penalty. Include I was coerst [sic] to do what I did. I was forced to follow what he said. Even phone recordings show they directed me on what to do. Give me a lawyer who will do the case properly. No one ever gave me any discovery or showed me any evidence, even though I asked many times.

(*Id*. at 13).

The United States filed a response in opposition on February 17, 2012 (doc. 88) to Rodriguez's initial § 2255 motion (doc. 83), and subsequently filed a second response in opposition on June 13, 2012 (doc. 97) to the amended §2255 motion (doc. 95). The United States argues, in sum, that the only reasonable interpretation of Rodriguez's motion is that "he is alleging that his counsel should not have let him plead guilty, and he would like to start the process all over again with new counsel." (Doc. 97 at 3). The United States further argues that "the motion fails as a matter of law because [Rodriguez] does not assert (much less prove) that, but for his attorney's errors, he would not have pleaded guilty and instead would have gone to trial." (*Id*.). The United States also asserts that Rodriguez has failed to assert or prove any prejudice due to attorney error with respect to his sentencing inasmuch as he has not even attempted to show any reasonable probability of receiving a sentence lower than the 60-month sentence that he received, which is 50% below the 120-month applicable statutory minimum

---

[2] Rodriguez ends his narrative her by stating: "I need a real lawyer who will review all the facts and show I was coerced to do what I did." (*Id*. at 12).

sentence he would have received but for the government motion for a downward departure based on his substantial assistance to law enforcement under U.S.S.G. § 5K1.1. (*Id.*, *citing* Docs. 57, 61, 75-1 at 7-8; PSR at ¶¶ 92, 93).

Rodriguez replied on July 25, 2012, and therein specifically argued that his sentence "should have been lower than the 60 months that was give [sic] to him" (doc. 98 at 2), but fails to indicate any rational or legal basis for a lesser sentence. He also concedes that he has no factual basis for contending that his counsel was ineffective:

> The "facts supporting a claim of ineffective assistance of counsel["] include the prevailing professional norms and the corresponding duties that the attorney owed the Defendant. Until defendant learns of those duties and that the attorney breached those duties, the defendant does not have knowledge of the facts that support the claim of ineffective assistance.

(*Id.* at 3). Rodriguez also reasserts his complaints about not receiving any discovery or evidence to review and requests an evidentiary hearing at which, presumably, the United States would be required "to show cause why the relief sought shoud [sic] not be granted, and a reduction of sentence or time served [given]." (*Id.*).

The issues have been fully briefed and are ripe for adjudication. Despite Rodriguez's contentions to the contrary, there is no need for an evidentiary hearing because his claims can be resolved based on the existing record. Schultz v. Wainwright, 701 F.2d 900, 901 (11th Cir. 1983)(" An evidentiary hearing is not required where, as here, the district court can determine the merits of the ineffectiveness claim based on the existing record."); *see also* Aron v. United States, 291 F.3d 708, 715 (11th Cir. 2002)("[D]istrict court is not required to hold an evidentiary hearing where the petitioner's allegations are affirmatively contradicted by the record, or the claims are patently frivolous."); United States v. Mobley, 2013 WL 4166553, *22 (S.D. Ala.,

August 15, 2013)("There is no need for an evidentiary hearing [because] [o]n the existing record, Mobely has not presented non-conclusory facts that, if true, would entitle her to relief."). *See also*, San Martin v. McNeil, 633 F.3d 1257, 1271 (11th Cir. 2011) ("'An evidentiary hearing may be necessary where the material facts are in dispute, but a petitioner is not entitled to an evidentiary hearing when his claims are merely conclusory allegations unsupported by specifics.'"), *quoting* Pugh v. Smith, 465 F.3d 1295, 1300 (11th Cir. 2006).

## II. STATEMENT OF THE LAW

### A. Habeas Standard.

The limited scope of habeas relief is well established, as this Court has recognized:

> Collateral relief is an extraordinary remedy which "may not do service for a [] [direct] appeal." United States v. Frady, 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *see also* Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) ("Courts have long and consistently affirmed that a collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal."). A defendant who has waived or exhausted his right to appeal is presumed to stand "fairly and finally convicted." Frady, 456 U.S. at 164. Unless a claim alleges a lack of jurisdiction or constitutional error, the scope of the collateral attack has remained extremely limited. United States v. Addonizio, 442 U.S. 178, 185, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979). Consequently, '[i]f issues are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack. . . . A defendant is, of course, entitled to a hearing of his claims, but not to duplicate hearings. The appellate process does not permit reruns." Moore v. United States, 598 F.2d 439, 441 (5th Cir. 1979).

United States v. Evans, 2008 WL 3200694 at *3 (S.D. Ala. 2008).

### B. Strickland v. Washington Standard.

A two-fold analysis must be applied to claims of ineffective assistance of counsel, as set forth by the Supreme Court and the Eleventh Circuit:

> To succeed on a claim of ineffective assistance, a habeas petitioner must satisfy both prongs of the test set out by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The performance prong requires a petitioner to establish that counsel performed outside the wide range of

6

reasonable professional assistance and made errors so serious that he failed to function as the kind of counsel guaranteed by the Sixth Amendment. *Id*. at 687-89, 104 S.Ct. at 2064-65. The prejudice prong requires a petitioner to demonstrate that seriously deficient performance of his attorney prejudiced the defense. *Id*. at 687, 104 S.Ct. at 2064.

Unless a petitioner satisfies the showings required on both prongs, relief is due to be denied. *Id*. As a result, once a court decides that one of the requisite showings has not been made it need not decide whether the other one has been. *Id*. at 697, 104 S.Ct. 2069 (A court need not "address both components of the inquiry if the [petitioner] makes an insufficient showing on one."); Duren v. Hopper, 161 F.3d 655, 660 (11th Cir. 1998) ("if a defendant cannot satisfy the prejudice prong, the court need not address the performance prong"). . . .

To establish prejudice, a petitioner must show "there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. [P]etitioners must affirmatively prove prejudice because '[a]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. [T]hat the errors had some conceivable effect of the outcome of the proceeding' is insufficient to show prejudice." Gilreath v. Head, 234 F.3d 547, 551 (11th Cir. 2000) (alteration in original) (*quoting* Strickland, 466 U.S. at 693, 104 S.Ct. at 2067).

United States v. Butcher, 368 F.3d 1290, 1293-94 (11th Cir. 2004). In making the performance determination, conduct must be evaluated from the attorney's perspective at the time in order to avoid the distorting effects of hindsight. Strickland, 466 U.S. at 689; *see also* Payne v. United States, 566 F.3d 1276, 1277 (11th Cir. 2009)(" a court must avoid 'the distorting effects of hindsight' and must 'evaluate the conduct from counsel's perspective at the time'."). In guilty plea cases, the prejudice showing requires a defendant to demonstrate that, but for alleged ineffective assistance of counsel, the defendant would not have pleaded guilty. Hill v. Lockhart, 472 U.S. 52, 59 (1985). Given the petitioner's exacting burden, "the cases in which habeas petitioners can properly prevail . . . are few and far between." Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*).

7

III.   ANALYSIS.

In order for Rodriguez to establish ineffective assistance of counsel, he "must show that his attorney's performance was deficient and that the deficiency was prejudicial." Cross v. United States, 893 F.2d 1287, 1290 (11th Cir. 1990).  However, "[c]onclusory allegations of ineffective assistance are insufficient" Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992), *quoting* United States v. Lawson, 947 F.2d 849, 853 (7th Cir. 1991).  Rodriguez has neither shown that his counsel's performance was deficient nor shown that he was in any manner prejudiced by any alleged deficiency.

Rodriguez fails to set forth any factual basis for his contention that counsel was ineffective.  For example, although he contends that counsel failed to "call witness [sic] and did not make reason [sic] decision in following up on discovery, which if presented the information [sic], it would have showen [sic] information about his kidnapping and torture he was force [sic] to do" (doc. 98 at 3), he does not identify any such witness.

Rodriguez also fails to set forth a valid claim that he suffered any prejudice due to his counsel's alleged error at sentencing.  The record reflects he was advised at the time he entered his guilty plea that he could be sentenced, *inter alia*, to "a term of imprisonment of not less than 10 years up to life." (Doc. 75 at 10).  He was sentenced to 60 months imprisonment pursuant to "a departure or reduction of 50 per cent off the mandatory minimum [10 year sentence]" as requested by the government in a motion for downward departure pursuant to 18 U.S.C. § 3553(e) and § 5K1.1 of the U.S.S.G.  (Docs. 57, 61, 75-1 at 7).  He has failed to establish, or even assert, a factual or legal basis for his claim that his sentence should have been less than 60 months imprisonment.

Although Rodriguez repeatedly complains that his counsel failed to provide the Court with information or evidence of his mental illness and his alleged kidnapping and torture, the record is replete with references to these matters. *See e.g.*, Doc. 75 (guilty plea hearing transcript: defense counsel explained to this Court that he had reviewed "reports from his psychiatrist and the treatment facility, and they indicate that he is doing well on his medications"; and, that Rodriguez was "fully capable of proceeding. . . ."); Doc. 27 (defense counsel moved to continue Rodriguez's trial due to "his present mental state," namely, "bipolar disorder with psychotic features"; and, detailing the then current efforts to treat him); Doc. 29 (this Court's order acknowledging the same, and granting the motion); PSR at ¶ 18 (offense conduct section: Rodriguez explained his fear that the drug organization "would kill him over the loss of the last drug load in Texas."); *Id.* at ¶¶ 73-76 (detailed references to Rodriguez's history of "anti-social disorder, anxiety, and Post-Traumatic Stress Disorder" and related treatment); Doc. 58 (prior to sentencing, defense counsel supplemented the record with "progress notes" alerting this Court to Rodriguez's then-current mental health status). These references from the record clearly contradict Rodriguez's assertion that his counsel "withheld" his mental state from this Court (doc. 95 at 4).[3]

For the reasons set forth above, Rodriguez has failed to "show that his attorney's performance was deficient and that the deficiency was prejudicial." Cross v. United States, 893 F.2d 1287, 1290 (11th Cir. 1990). Rodriguez's § 2255 motion is, therefore, due to be denied.

---

[3] In view of the evidence in the record concerning Rodriguez's mental illness and treatment, there is no basis to contend that appellate counsel erred in advising him that his appeal would be based only on the evidence of record at the time of appeal. (Doc. 95 at 2). Additionally, the psychiatric reports at issue not only establish the existence of mental illness but also Rodriguez's improvement with his medications. *See e.g.*, Doc. 58 at 5 (Progress Note dated 10/29/10 in which it is reported that Rodriguez "continues to do pretty well as long as he is consistent about staying on the medicine.").

<u>Petitioner is not entitled to a Certificate of Appealability</u>.

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. § 2255; Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "[A] COA should issue [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484, (2000); *see* <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further'."). Inasmuch as it is clear that Rodriguez's claims for relief made pursuant to § 2255 are without merit, a reasonable jurist could not conclude either that this Court is in error in dismissing the instant petition or that the petitioner should be allowed to proceed further. *See* <u>Slack</u>, 529 U.S. at 484 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further.").

In the instant case, Petitioner's claims do not warrant the issuance of a Certificate of Appealability. Petitioner's claims are without merit. Therefore, no reasonable jurist could differ on the appropriate disposition of the petition on the record presented. It is thus recommended that the Court deny any request for a Certificate of Appealability. Because Petitioner is not entitled to a Certificate of Appealability, any request for leave to appeal *in forma pauperis* is also due to be denied.

## CONCLUSION

For the reasons set forth above, Rodriguez has failed to establish that he was denied effective assistance of counsel at any juncture of the proceedings. It is, therefore, the recommendation of the undersigned that his § 2255 motion be **DENIED**. It is further recommended that any motion for a Certificate of Appealability or for permission to appeal *in forma pauperis* be **DENIED**.

### Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. L.R. 72.4. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this  26th  day of February, 2014.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**